**STERNS & WEINROTH,**
A Professional Corporation
50 West State Street, Suite 1400
Trenton, New Jersey 08607-1298
Telephone: (609) 392-2100
Facsimile: (609) 392-7956
*Attorneys for Plaintiff Osteotech, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| OSTEOTECH, INC., a Delaware corporation, | Civil Action |
| Plaintiff, | Docket No.: |
| v. | |
| BIOLOGIC, LLC, a California limited liability company; DURAID ANTONE, a California resident; RUSSELL COOK, a California resident; LAWRENCE POSER, a California resident; RADIUS MEDICAL, LLC, a California limited liability company; and R AND D MEDICAL, LLC., a California limited liability company | **DOCUMENT FILED ELECTRONICALLY** |
| | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Osteotech, Inc. ("Osteotech"), for its Complaint against defendants Biologic, LLC ("Biologic"); Duraid Antone ("Antone"); Lawrence Poser ("Poser"); Russell Cook ("Cook"); Radius Medical, LLC ("Radius Medical"); and R and D Medical, LLC ("R and D Medical") (hereinafter sometimes collectively referred to as "defendants"), states and alleges as follows:

### PRELIMINARY STATEMENT

1. This action is based on direct and induced violations of contractual commitments establishing obligations not to compete or misuse confidential information. Defendants either breached such commitments themselves or interfered with Osteotech's contractual rights with

other defendants in order to enrich themselves by developing and/or participating in the transfer of a competing business for $18 million in cash, stock, and escrowed funds.

## THE PARTIES

2. Plaintiff Osteotech is a Delaware corporation having a principal place of business at 51 James Way, Eatontown, New Jersey.

3. Defendant Biologic is a California limited liability company, with its principal place of business in Westminster, California. Biologic is a sales agency for Osteotech, contractually responsible for educating potential users of Osteotech tissue forms within a trade area in and around Los Angeles, California.

4. Defendant Duraid Antone is an individual who resides in Aliso Viejo, California. Antone is a former employee of Osteotech who was employed by the company as Group Sales Director – West from May 2, 2005, through October 27, 2006.

5. Defendant Lawrence Poser is an individual who resides in Carlsbad, California. Poser is a former employee of Osteotech who was employed by the company as Business Development Manager from January 7, 2006, through January 5, 2007.

6. Defendant Radius Medical is a California limited liability company, with its principal place of business in Newport Beach, California. Radius Medical was founded by defendant Cook. Defendant Antone became affiliated with Radius Medical as well. Radius Medical describes itself as a "global biotechnology company that designs, manufactures and distributes collagen-based medical biomaterials."

7. Defendant R and D Medical, LLC is identified as a California limited liability company with its principal place of business in Newport Beach, California. At least defendant Antone is a principal of R and D Medical.

2

8. Defendant Russell Cook is an individual who resides in Costa Mesa, California. Cook is the principal of Biologic and the founder of Radius Medical.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

10. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b). Defendants may be found in this district, and a substantial part of the events giving rise to the claims occurred in this district. Defendants Biologic, Antone, and Poser executed agreements selecting this venue for litigation disputes.

## BACKGROUND

11. Osteotech is a public company that develops technologies and processes tissue forms that effectively use human bone and bone connective tissue, called "allograft" bone tissue, for surgical procedures to repair bone. Osteotech is the nation's leading processor of transplantable human bone tissue. These tissue forms are used in a wide variety of procedures, including spinal fusions, trauma fracture fusions, bone augmentation, and the replacement of damaged ligaments and tendons. Osteotech is an innovator in developing new biologic, biomaterial, and device systems to benefit patients.

12. Osteotech provides its allograft bone and tissue in various forms and sizes. It provides demineralized bone tissue under the trademark GRAFTON® DBM. It provides bio-implants under the trademark GRAFTECH® Bio-Implants. It recently received approval from the U.S. Food and Drug Administration ("FDA") for its PLEXUR® P biocomposite.

13. Osteotech's tissue forms have been acclaimed in the industry. After the

3

introduction of Osteotech's GRAFTON® DBM Gel in 1991, the Newark Sunday Star Ledger referred to GRAFTON® DBM Gel as a "miracle gel." Recognizing GRAFTON® DBM Gel as a pioneering invention, the scientific community awarded the 1998 Thomas Edison Award to GRAFTON® DBM Gel's inventors for the outstanding invention in the biotechnology division. To date, Osteotech's GRAFTON® DBM forms have been used in more than 400,000 surgical procedures by more than 4,000 transplant professionals, worldwide.

14. In addition to the research and development underlying its tissue forms, Osteotech has invested great resources in educating surgeons and hospitals about its tissue forms and their advantages over traditional methods of bone repair. In so doing, Osteotech has developed a comprehensive educational and marketing program that was and continues to be presented to surgeons and hospitals through a national network of trained representatives. Defendants Antone and Poser were managers for such representatives.

15. Such education efforts also require close working relationships with agencies responsible for particular geographic areas. Such relationships require Osteotech and its agencies to work closely together in a common goal of providing the public with bone repair technologies. This collaboration has included, and is required by written agreements to include, regular meetings between personnel from Osteotech and sales agencies to discuss processing issues, specifications for tissue forms, new technologies, and marketing methods and information concerning its GRAFTON® DBM, GRAFTECH® Bio-Implants, and other tissue forms and technologies, along with other confidential and proprietary Osteotech information. In addition, as required by written agreements between the companies, Biologic has been granted access to Osteotech's processing facility and has observed many aspects of Osteotech's operations.

16. Given the highly confidential and proprietary nature of the information disclosed

4

to Biologic and the individual defendants by Osteotech, Osteotech executed with Biologic, Antone, and Poser written agreements establishing, among other obligations, noncompetition obligations and prohibitions on the disclosure or unauthorized use of any confidential business information provided by Osteotech.

17. On September 15, 2004, Biologic entered into a Sales Agency Agreement, renewable annually, with Osteotech. The Sales Agency Agreement was executed by Russell Cook as "Principal" of Biologic. Through the Sales Agency Agreement, Biologic committed to "use its Best Efforts to perform" "educational efforts designed to inform orthopedic surgeons and others of the benefits of [a]llografts" offered by Osteotech. Within its sales territory in and around Los Angeles, California, Biologic was granted exclusive rights to provide such services by Osteotech.

18. On September 20, 2004, just five days after executing Biologic's Sales Agency Agreement with Osteotech, and unbeknownst to Osteotech, Cook founded Radius Medical as a California limited liability company now based in Newport Beach, California.

19. On November 4, 2004, Radius Medical entered into a Supply Agreement with a Taiwanese corporation, Maxigen Biotech, Inc. The Supply Agreement granted Radius exclusive licensing and marketing rights to Formagraft Bone Graft Strips, Formagraft Bone Graft Granules, and the underlying collagen technology (together "Formagraft"). Formagraft is a biologic material used as bone filler to facilitate fusion during spinal fusion procedures, specifically promoting bone growth at the operation site.

20. The Radius Medical product, Formagraft, is an alternative to Osteotech's tissue forms and is competitive with Osteotech's tissue forms, offered in the same marketplace, to the same types of users, and proposed for use in the same types of medical procedures.

21. In 2005, Russell Cook recommended to Osteotech that it hire Duraid Antone, with whom he had previously worked, and Osteotech did hire Antone effective May 2, 2005.

22. On March 28, 2005, R and D Medical caused to be filed an application for FDA 510(k) approval of Radius Medical's Formagraft product, and on May 27, 2005, the FDA issued its approval.

23. At various times, Biologic, Radius Medical, R and D Medical, and Antone have all indicated at least one common address: 1048 Irvine Avenue, Newport Beach, California. Today, Biologic and Radius Medical list the same address: 3700 Campus Drive, Suite 204, Newport Beach, California.

24. Defendant Antone, in his capacity as Group Sales Director of Osteotech, had responsibilities for working with Biologic to determine quotas, compensation, and many other aspects of the relationship between Osteotech and Biologic. While still obligated to Osteotech, and unbeknownst to Osteotech, at least Antone worked on behalf of the interests of Biologic and Biologic's member, defendant Cook, while still employed by and obligated to Osteotech.

25. While still obligated to Osteotech, and unbeknownst to Osteotech, at least Antone and Cook worked to advance the interests of Radius Medical as well. Antone joined Cook as a manager of Radius Medical. Biologic and Radius Medical shared office space, and sales activities for the benefit of Radius Medical were conducted at the offices of Biologic.

26. While still obligated to Osteotech, and unbeknownst to Osteotech, at least Antone worked to advance the interests of R and D Medical.

27. On January 25, 2007, NuVasive, Inc., a public company incorporated in Delaware, announced the January 23, 2007, acquisition of technology and assets from Radius Medical, through an Asset Purchase Agreement to which Biologic, defendant Cook, defendant

Antone, and Antone Family Partners, a California general partnership, were also parties. Antone is a general partner of Antone Family Partners. The acquired technology included exclusive licensing and marketing rights for Formagraft.

28. In the Asset Purchase Agreement, Radius represented, among other things, that to its knowledge, no "valid grounds exist for any claims that the manufacture, sale, licensing or use of any [collagen-based medical biomaterials products] . . . infringes the intellectual property rights of any person."

29. NuVasive paid $16 million in stock and cash for Radius Medical's rights in Formagraft and also placed an additional $2 million in escrow payable to the sellers after an eighteen-month period.

30. By the time of the January 23, 2007, acquisition, according to NuVasive's press release, Radius Medical was generating $3 million in annual sales. NuVasive has projected revenues from Radius Medical products to increase to $10 million per year by 2008.

31. In connection with the acquisition by NuVasive, at least Antone and Cook entered into Consulting and Noncompetition Agreements with NuVasive. Antone entered into a consulting and educational role for NuVasive. Poser became a territory sales representative for NuVasive in the San Diego area. All employees, distributors, and consultants of Radius Medical executed proprietary information and confidentiality agreements with Radius Medical. Radius Medical also committed to provide consulting services to NuVasive and agreed not to engage in any competitive activities anywhere in the United States and elsewhere. Radius Medical, Cook, and Antone committed to complete "transition activities" over the six months following the acquisition, and all committed not to make any "negative . . . [or] derogatory or disparaging" statement relating to any aspect of the transferred Radius Medical business and products.

32. All defendants have profited, been enriched, and otherwise benefited through their involvement with the improper actions of Radius Medical, including but not limited to their receipt of cash and/or stock in connection with the $18 million sale by Radius Medical to NuVasive.

## COUNT I
### (Breach of Sales Agency Agreement by Biologic)

33. Osteotech restates and realleges paragraphs 1 through 32.

34. During the term of Biologic's engagement as exclusive sales agency for Osteotech, and for one year thereafter, Biologic committed in its Sales Agency Agreement to "not, directly or indirectly, perform any services in connection with, or represent, promote, market or distribute in any manner any products or services that compete with" Osteotech's allograft tissue forms.

35. Biologic further committed, without regard to any particular term, not to "disclose . . . or use . . . or permit to be used in competition with Osteotech, any proprietary or confidential information of Osteotech."

36. By its member, Cook, incorporating and operating Radius Medical to distribute collagen-based biologic tissue forms in competition with Osteotech, Biologic breached the noncompetition obligations contained in the Sales Agency Agreement. Because its competitive work for Radius Medical inevitably required the use of proprietary and confidential information belonging to Osteotech, Biologic also breached its obligation not to use or disclose proprietary and confidential information owned by Osteotech.

37. By selling technology rights to NuVasive and by taking on additional obligations inconsistent with its preexisting obligations to Osteotech, Biologic further breached its Sales Agency Agreement.

8

38. Biologic's actions have caused, and will continue to cause, irreparable harm to Osteotech unless enjoined. In the Sales Agency Agreement, "Osteotech and [Biologic] acknowledge and agree that irreparable damage will result in the event of any breach" of Biologic's commitment to "not, directly or indirectly, perform any services in connection with, or represent, promote, market or distribute in any manner any products or services that compete with" Osteotech's allograft tissue forms.

39. Biologic's actions will likely cause Osteotech additional harm if Biologic is not compelled to provide specific performance of its affirmative obligations under the Sales Agency Agreement.

40. Biologic's unlawful actions have profited and are profiting it.

## COUNT II
**(Breach of Osteotech Employment Agreements by Antone and Poser)**

41. Osteotech restates and realleges paragraphs 1 through 40.

42. In connection with their employment by Osteotech, Antone and Poser executed valid and enforceable Sales Employee Non-Competition, Non-Solicitation, Information and Inventions Agreements with Osteotech ("Employee Agreements").

43. The Employee Agreements include a number of obligations establishing prohibited competitive acts during the period of employment by Osteotech and for twelve months thereafter. They provide, without regard to geographic limits, and amongst other obligations, that the employee shall not:

> (b) solicit or accept business in competition with Osteotech from any existing . . . or prospective customer of Osteotech which Employee learned of by virtue of Employee's employment with Osteotech;

9

> . . . .
>
> (d) directly or indirectly encourage or assist any . . . customer . . . of Osteotech to terminate or alter . . . its relationship with Osteotech.

44. The Employee Agreements provide absolute constraints against competition within the employees' designated geographic areas, providing that within those areas, the employee shall not:

> (a) engage by any means in any business which is competitive with the business of Osteotech . . . .

45. The Employee Agreements further provide that the twelve-month post-employment period of restriction "shall be extended for a period equal to the duration of any breach of Employee's obligations pursuant to this Agreement."

46. The Employee Agreements further provide absolute constraints on use of Osteotech confidential information and trade secrets:

> Throughout the term of employment, and at all times, thereafter, Employee will not disclose . . . (except as authorized by Osteotech) any confidential information relating to Osteotech's business, including . . . information relating to trade secrets, business methods, products, processes, procedures, developmental or experimental projects, suppliers, customer lists or the needs of customers or prospective customers.

47. The Employee Agreements further provide that "Employee shall notify any prospective employer, in writing, of the existence of this Agreement, and provide a copy of such written notice to the Human Resources Department of Osteotech."

48. Antone and Poser also agreed to abide by the obligations established by Osteotech's Code of Business Conduct and Ethics. That Code includes detailed commitments relating to conflicts of interest and to protection of confidential information.

49. Antone and Poser breached the noncompetition provisions of their Employee

10

Agreements. Because their competitive work for Radius Medical inevitably required the use of proprietary and confidential information belonging to Osteotech, Antone and Poser also breached the obligations not to use or disclose confidential information owned by Osteotech imposed by the Employee Agreements and Osteotech's Code of Business Conduct. At least Antone also breached the conflict of interest provisions of Osteotech's Code of Business Conduct.

50. By participating in the sale of technology rights to NuVasive and by taking on additional obligations inconsistent with their preexisting obligations to Osteotech, Antone further breached his Employee Agreement and Code of Business Conduct obligations.

51. Their work for Osteotech gave Antone and Poser reason to know, and they did know, that Osteotech intended its proprietary and confidential information to remain confidential.

52. Antone and Poser also breached their obligations to notify the Osteotech Human Resources Department of Communications with prospective employers.

53. The unlawful actions of Antone and Poser have profited and are profiting them.

## COUNT III
### Tortious Interference with Contract by All Defendants

54. Osteotech restates and realleges paragraphs 1 through 53.

55. At all relevant times, Biologic, Antone, and Poser had valid and enforceable agreements restricting activities competitive with Osteotech and restricting use of confidential information belonging to Osteotech. At all relevant times, Cook, as principal of Biologic, was subject to obligations to Osteotech through Biologic's valid and enforceable agreements restricting activities competitive with Osteotech and restricting use of confidential information belonging to Osteotech.

11

56. Each defendant was aware of the obligations owed to Osteotech by other defendants.

57. By entering into agreements and relationships causing Antone and Poser to breach their obligations to Osteotech, Biologic interfered with Osteotech's Employee Agreements. By participating in the businesses of Radius Medical and R and D Medical and causing Biologic to breach its obligations to Osteotech, Antone interfered with Osteotech's Sales Agency Agreement with Biologic. By entering into agreements and relationships causing Biologic, Antone, and Poser to breach their obligations to Osteotech, Radius Medical, R and D Medical, and Cook interfered with Osteotech's Employee Agreements and Sales Agency Agreement.

58. Defendants' actions lacked justification.

59. Defendants' actions have caused, and will continue to cause, irreparable harm to Osteotech unless enjoined.

60. Defendants have been unjustly enriched by their unlawful actions.

## COUNT IV
### (Misappropriation of Trade Secrets by All Defendants)

61. The allegations of paragraphs 1 to 60 are realleged and incorporated by reference.

62. Osteotech possesses confidential information that also constitutes trade secrets.

63. Osteotech has expended substantial resources in developing its trade secrets for its exclusive benefit, and the information provides Osteotech with an advantage over its competitors. Osteotech's trade secrets derive independent economic value from the fact that they are neither generally known nor readily ascertainable by proper means by Osteotech's competitors, customers, and others.

64. Osteotech does not disclose its trade secrets to its competitors and has taken

12

reasonable efforts under the circumstances to protect their confidentiality, by means including, but not limited to, having its employees sign confidentiality agreements and maintaining systematic procedures protecting its trade secrets.

65. Through their or their principals' or members' extended periods of involvement with Osteotech, or extensive contacts with such persons, all defendants knew or had reason to know that Osteotech intended its trade secrets to remain confidential.

66. Defendants Biologic, Antone, and Poser misused Osteotech's trade secrets by placing themselves in positions in which they inevitably must use and disclose such trade secrets in competition with Osteotech. Radius Medical, R and D Medical, and Cook violated Osteotech's trade secret rights by entering into transactions that inevitably caused Biologic, Antone, and Poser to misuse Osteotech's trade secrets.

67. Defendants' actions constitute willful and malicious misappropriation of Osteotech's trade secrets, in violation of the common law of New Jersey.

68. Defendants have been unjustly enriched by their unlawful actions.

## COUNT V
### (Unfair Competition by All Defendants)

69. The allegations of paragraphs 1 to 68 are realleged and incorporated by reference.

70. Defendants' surreptitious competition against Osteotech while gathering competitively valuable proprietary and confidential information through their relationships, or their affiliates' relationships, with Osteotech constitutes unfair competition under the common law of New Jersey.

71. Defendants were unjustly enriched by their unfair competition.

13

## COUNT VI
### (Constructive Trust Imposed Upon All Benefits Obtained by Radius Medical, R and D Medical, Biologic, Antone, Poser, and Cook )

72. The allegations of paragraphs 1 to 71 are realleged and incorporated by reference.

73. The breaches of duties to Osteotech by Biologic, Antone, and Poser, and violations of New Jersey law by Radius Medical, R and D Medical, and Cook require the imposition of a constructive trust on proceeds that defendants obtained through their wrongful acts.

74. Amongst the proceeds obtained or to be obtained by those defendants are payments of stock and cash from NuVasive.

75. Osteotech is entitled to recover the proceeds of funds obtained by those defendants and persons or entities over which they exert control, along with all other funds obtained by those defendants as a result of their wrongful actions toward Osteotech.

**WHEREFORE**, Osteotech prays for judgment as follows:

(a) That defendant Biologic be ordered preliminarily and permanently to complete performance of the Sales Agency Agreement, including the obligation to use its best efforts to satisfy specified sales quotas;

(b) That defendant Biologic be ordered preliminarily and permanently to honor its noncompetition, confidentiality, and related obligations imposed by the Sales Agency Agreement;

(c) That Osteotech be awarded compensatory damages; pre-judgment and post-judgment interest; attorneys' fees pursuant to the Sales Agency Agreement and other applicable law; costs of suit and other disbursements as provided by law;

(d) That defendants Antone and Posner be ordered preliminarily and permanently to honor their noncompetition, confidentiality and related obligations imposed by the Employee Agreements;

(e) That Osteotech be awarded compensatory damages; pre-judgment and post-judgment interest; attorneys' fees pursuant to Employee Agreements and other applicable law; costs of suit and other disbursements as provided by law;

(f) That all defendants be ordered preliminarily and permanently to terminate and repair any interference with Osteotech's contracts with other defendants;

(g) That all defendants be ordered preliminarily and permanently to act to ensure that cash or stock received from NuVasive not be distributed further or dissipated and that the remaining $2 million in escrow not be distributed pending disposition of this action;

(h) That an accounting occur to determine the damages caused by defendants' actions in violation of Osteotech's rights;

(i) That a constructive trust be imposed to permit recovery of all property wrongfully acquired by any defendant as a result of breaches of obligations to Osteotech; and

(j) That Osteotech be awarded such other and further necessary and proper relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff Osteotech, Inc. demands trial by jury on all issues so triable.

          **STERNS & WEINROTH,**
          A Professional Corporation
          *Attorneys for Plaintiff Osteotech, Inc.*

          By: /s/ Karen A. Confoy
              Karen A. Confoy
              kconfoy@sternslaw.com

Dated: March 19, 2007

          Of Counsel:
          **DORSEY & WHITNEY LLP**
          Peter M. Lancaster (MN ID # 159840)
          Kenneth E. Levitt (MN ID # 253674)
          Kevin S. Ueland (MN ID # 342610)
          50 South Sixth Street, Suite 1500
          Minneapolis, MN 55402-1498
          Telephone: (612) 340-2600