NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| OSTEOTECH, INC., | : | |
| Plaintiff, | : | CIVIL ACTION NO. 07-1296 (JAP) |
| v. | : | |
| | : | **OPINION** |
| BIOLOGIC, LLC, et al., | : | |
| Defendants. | : | |

PISANO, District Judge.

Presently before the Court is a motion for a partial judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), filed by Defendants Biologic, LLC ("Biologic") Duraid Antone ("Anotne"), Russell Cook ("Cook"), and Radius Medical, LLC ("Radius") (collectively "Defendants"). Defendants argue that Plaintiff Osteotech, Inc. ("Plaintiff") has not set forth a claim for misappropriation of a trade secret, as alleged in Count Five of its Complaint. Plaintiff opposes the motion. For the reasons set forth herein, the Court denies Defendants' motion.

**I.   BACKGROUND**

This action arises from Defendants' alleged engagement in improper competitive tactics. Plaintiff is engaged in the business of "develop[ing] technologies and process[ing] tissue forms that effectively use human bone and bone connective tissue, including 'allograft' bone tissue, for surgical procedure to repair bone." (Am. Cmplt. ¶ 7). As part of this business, Plaintiff created a synthetic osteoconductive graft form, its PLEXUR® P biocomposite, as well as trademarked

demineralized bone tissue and bio-implants.[1]  (Am. Cmplt. ¶ 8).  According to Plaintiff, "[i]t sought to maintain its technology and its plan with respect to [PLEXUR® P] as confidential before the product roll-out was announced publicly."  (Am. Cmplt. ¶ 10).  On September 15, 2004, Plaintiff entered into a Sales Agency Agreement ("the Agreement") with Biologic, through its principal, Cook.  (Am. Cmplt. ¶ 14).  Under the terms of that Agreement, Biologic was to "inform orthopedic surgeons and others of the benefits of [Plaintiff's a]llografts" within their sales territory in and around Los Angeles, California.  (Am. Cmplt. ¶ 14).  On May 2, 2005, Plaintiff hired Antone as Group Sales Director, which required "working with Biologic to determine quotas, compensation, and many other aspects of the relationship between [Plaintiff] and Biologic."  (Am. Cmplt. ¶ 19, 21).

On March 19, 2007, Plaintiff filed a Complaint against Defendants, alleging "direct and induced violations of contractual commitments establishing obligations not to compete or misuse confidential information."  (Cmplt. ¶ 1).  On January 3, 2008, Plaintiff amended that Complaint and raised seven counts against Defendants: breach of Sales Agency Agreement by Biologic and Cook (Count I); breach of Osteotech Agreements by Antone (Count II); breach of duty of loyalty by Antone (Count III); tortious interference with contract (Count IV); misappropriation of trade secrets (Count V); unfair competition (Count VI); and unjust enrichment (Count VII).

Specifically, Plaintiff alleges that, on September 20, 2004, Cook formed under California law Radius, a limited liability corporation with the purpose of marketing within the United States Formagraft, an existing synthetic bone product created in Taiwan.  (Am. Cmplt. ¶ 15-16).

---

[1]  Plaintiff's demineralized bone tissue is issued under the trademark GRAFTON® DBM, and its bio-implants is issued under the trademark GRAFTECH® Bio-Implants.  (Am. Cmplt. ¶ 8).

According to Plaintiff, Cook recommended that Plaintiff hire Antone "to advance the interests of Radius[,]" (Am. Cmplt. ¶ 19-20), that Antone was actually a manager of Radius, (Am. Cmplt. ¶ 20), and that "Radius, Cook, and Antone surreptitiously established a nationwide network of sales agents to distribute Radius's competing products[,]" (Am. Cmplt. ¶ 22).  Plaintiff further submits that "[n]either Cook nor Antone told [Plaintiff] that they were secretly in business with each other or that they were secretly competing with [Plaintiff] through the development of a distribution network for their competing product." (Am. Cmplt. ¶ 21).  Moreover, Plaintiff alleges that, during the period of March to May 2006, Defendants filed trademark applications with the United States Patent and Trademark Office that included trademarks discussed by Plaintiff as part of its business plans. (Am. Cmplt. ¶ 23).

On January 25, 2007, NuVasive, Inc. ("NuVasive"), a Delaware corporation, acquired technology and assets, including Formagraft rights, from Radius through an Asset Purchase Agreement. (Am. Cmplt. ¶ 25).  Biologic, Cook, Antone, and Antone Family Partners were parties to that Asset Purchase Agreement. (Am. Cmplt. ¶ 25).  Further, Plaintiff alleges that, in connection with the Asset Purchase Agreement, "Antone and Cook entered into Consulting and Noncompetition Agreements with NuVasive that were inconsistent with their obligations to" Plaintiff. (Am. Cmplt. ¶ 29).  As a result, Plaintiff claims to have been damaged by Defendants' conduct.

Defendants now move under Federal Rule of Civil Procedure 12(c) for a judgment on the pleadings only as to the misappropriation of trade secrets claim.  Essentially, Defendants argue that Plaintiff's misappropriation claim does not adequately set forth a claim for damages because Plaintiff has not made "a good faith averment pursuant to [Federal Rule of Civil Procedure] 11

-3-

that [D]efendant[s] actually did illegally use or disclose confidential information and that, in fact, [P]laintiff suffered harm thereby." (Defs' Br. at 7) (citing *Computer Sci. Corp. v. Computer Assoc. Int'l, Inc.*, 1999 WL 675446, *16 (C.D. Cal. Aug. 12, 1999)). Thereby, Defendants seek the Court to dismiss this Count because Plaintiff has not proved—nor "never will be able to" prove—actual use or disclosure. (Defs' Br. at 8). Moreover, according to Defendants, Plaintiff's claim fails because it failed to aver that "Defendants stole any trade secret in order to develop Formagraft[,]" (Defs' Br. at 8), or "to divert [Plaintiff]'s customers[,]" (Defs' Br. at 8-9). Plaintiff opposes the motion, arguing that it properly set forth a claim of misappropriation of trade secrets and noting that its Complaint seeks both damages and equitable relief.

## II.   DISCUSSION

### A.   Standard of Review under Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) permits a party to "move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for deciding a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is identical to that under Rule 12(b)(6)." *Celgene*, *supra*, 412 F. Supp. 2d at 443; *see Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (holding that, for complaint to withstand motion to dismiss under Rule 12(b)(6), "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"). Accordingly, the Court must construe as true all allegations in the Complaint. *Robb v. Philadelphia*, 733 F.2d 286, 290 (3d Cir. 1984). The Court will grant a motion under Rule 12(c) if, considering the allegations in the light most favorable to Plaintiff, "it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the

allegations[.]" *Celgene*, *supra*, 412 F. Supp. 2d at 443.

### B.    Analysis

Plaintiff's misappropriation of trade secrets claim is governed by New Jersey law.[2]  A claim of misappropriation of trade secrets under New Jersey law has six elements; to maintain such a claim, a plaintiff must establish that:

> (1) a trade secret exists;
> (2) the information comprising the trade secret was communicated in confidence by plaintiff to the employee;
> (3) the secret information was disclosed by that employee and in breach of that confidence;
> (4) the secret information was acquired by a competitor with knowledge of the employee's breach of confidence;
> (5) the secret information was used by the competitor to the detriment of plaintiff; and
> (6) the plaintiff took precautions to maintain the secrecy of the trade secret.

*Rycoline Prod., Inc. v. Walsh*, 334 N.J. Super. 62, 71 (App. Div. 2000); *see also Telmark Packaging Corp. v. Nutro Lab. and Nature's Bounty*, 2008 WL 43954, *5 (D.N.J. Jan. 2, 2008) (quoting *Rycoline*, *supra*).  Here, Defendants challenge only the fifth element of the misappropriation claim.  The issue thus becomes whether Plaintiff's allegations, construed to be true, sufficiently establish that Defendants used Plaintiff's trade secrets to raise its right to relief above the speculative level.

To meet the fifth prong, that is that the defendant used the trade secret "to the detriment of plaintiff[,]" a plaintiff may allege either actual use or "inevitable disclosure."  Under New

---

[2] "A trade secret claim in the federal courts is governed not by federal common law but by state law." *Rohm and Haas Co. v. Adco Chem. Co.*, 689 F.2d 424, 429 (3d Cir. 1982). Because this Court exercises jurisdiction over the present Complaint based on diversity jurisdiction, it is "bound to adjudicate the case in accordance with applicable state law." *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 202 (3d Cir. 2001). Moreover, the Agreement between Plaintiff and Antone provides for the application of New Jersey law.

Jersey law, the "inevitable disclosure" doctrine generally applies to those misappropriation claims through which a plaintiff seeks injunctive relief.  This doctrine provides that "an employer need not establish that its former employee has actually used or disclosed trade secrets." *Fluoramics, Inc. v. Trueba*, 2005 WL 3455185, *8 (N.J. Ch. Div. Dec. 16, 2005).  Rather, an employer may demonstrate that "there is a sufficient likelihood of 'inevitable disclosure' of its trade secrets to a competitor[]" to show "irreparable harm" not adequately remedied by money damages.  *Ibid.*  The rationale behind permitting a more lenient burden of proof on a claim seeking injunctive relief is that the "improper use or disclosure of an employer's trade secrets may constitute irreparable harm. . . . because the extent of the injury to the business as a result of this type of conduct cannot be readily ascertained[.]"  *Ibid.* (internal citations omitted).

Turning to Plaintiff's misappropriation of trade secrets claim, Plaintiff alleges that it: "possesses confidential information that also constitutes trade secrets[,]" (Am. Cmplt. ¶ 67), that are "neither generally known nor readily ascertainable by proper means by [Plaintiff]'s competitors, customers, or others[,]" (Am. Cmplt. ¶ 68).  Moreover, Plaintiff submits that it "does not disclose its trade secrets to its competitors and has taken reasonable efforts under the circumstances to protect their confidentiality[,]" (Am. Cmplt. ¶ 69), and that "[D]efendants knew or had reason to know that [Plaintiff] intended its trade secrets to remain confidential[,]"  (Am. Cmplt. ¶ 70).  Significantly, Plaintiff alleges that

> Defendants Biologic, Cook, and Antone misused [Plaintiff]'s trade secrets by placing themselves in positions in which they inevitably must use and disclose such trade secrets in competition with [Plaintiff].  Radius . . . violated [Plaintiff]'s trade secret rights by entering into transactions that inevitably caused Biologic, Cook, and Antone to misuse [Plaintiff]'s trade secrets.

(Am. Cmplt. ¶ 71).  Based on those allegations, Plaintiff claims that Defendants' actions

"constitute willful and malicious misappropriation of" Plaintiff's trade secrets and, thereby, seeks both monetary damages and injunctive relief. (Am. Cmplt. ¶ 72).

Defendants move for the Court to dismiss Plaintiff's claim on the basis that it seeks monetary relief by relying solely on the "inevitable disclosure" doctrine. As an initial matter, the Court recognizes that Plaintiff's claim seeks not only monetary damages, but also injunctive relief, making its reliance on the "inevitable disclosure" doctrine appropriate to the extent it may be used to show irreparable harm to Plaintiff. As enunciated in its Complaint, Plaintiff seeks the Court to "preliminarily and permanently" order Antone, Cook, and Biologic "to honor their noncompetition, confidentiality and related obligations[,]" (Am. Cmplt. at 16 ¶ (c)), and to "preliminarily and permanently" order Defendants "to act to ensure that cash or stock received from NuVasive not be distributed further and dissipated and that the remaining $2 million in escrow not be distributed pending disposition of this action[,]" (Am. Cmplt. at 16 ¶ (d)). Moreover, Plaintiff seeks an accounting to determine its damages and Defendants' unjust enrichment, as well as the imposition of a constructive trust "to permit recovery of all property acquired by any [D]efendant as a result of breaches of obligations or other wrongs done to [Plaintiff.]" (Am. Cmplt. at 16 ¶ (e)-(f)). Thus, to the extent that Plaintiff seeks injunctive relief on the basis of Defendants' causation of irreparable harm by virtue of their misappropriation of Plaintiff's trade secrets, Plaintiff may rely on the inevitable disclosure doctrine under New Jersey law.

Next, the Court rejects Defendants' argument that Plaintiff relies solely on the "inevitable disclosure" doctrine to establish that Defendants used Plaintiff's trade secrets, thereby causing Plaintiff to sustain monetary damages. In its Complaint, Plaintiff sets forth factual allegations

supporting an indication that Defendants did actually use misappropriated trade secrets. Plaintiff alleges that Defendants developed a competing distribution network to promote a competing product, arguably by using Plaintiff's trade secrets. (Am. Cmplt. ¶ 21-22). More significantly, Plaintiff also alleges that Defendants used Plaintiff's business plans of using certain trademarks to file trademark applications that mirrored Plaintiff's intended use. (Am. Cmplt. ¶ 23). Indeed, these allegations, as incorporated into Plaintiff's misappropriation claim, set forth the fifth element of its claim under *Rycoline*, *supra*.

As a result, considering all of the allegations in the light most favorable to Plaintiff, the Court cannot find that "it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations[.]" *Celgene*, *supra*, 412 F. Supp. 2d at 443. Indeed, Plaintiff need not make specific allegations as to exactly how Defendants used or disclosed Plaintiff's trade secrets; there is no heightened pleading standard for a misappropriation claim, and Plaintiff is entitled to seek discovery to support its allegations setting forth a *prima facie* claim. Therefore, the Court holds that, accepting as true Plaintiff's allegations, Plaintiff's misappropriation claim asserts "[f]actual allegations [sufficient] to raise a right to relief above the speculative level" sufficient to show that Defendants did use Plaintiff's trade secrets. *Twombly*, *supra*, 127 S. Ct. at 1965. Accordingly, the Court must deny Defendant's motion for a judgment on the pleadings as to Plaintiff's misappropriation claim. The Court, nevertheless, notes that, if Plaintiff cannot sustain its burden of proof as to this claim, Defendants may, at the appropriate time, move for summary judgment.

### III.   CONCLUSION

For the reasons expressed above, the Court denies Defendants' motion for a partial

judgment on the pleadings as to Plaintiff's misappropriation of trade secrets claim pursuant to Federal Rule of Civil Procedure 12(c).  An appropriate order accompanies this Opinion.

/s/ Joel A. Pisano  
JOEL A. PISANO, U.S.D.J.

Dated: March 6, 2008